IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NADINE COUNTESS,
    *Plaintiff*,

v.

STATE OF MARYLAND,
    *Defendant*.

Civil Action No. ELH-12-02252

**MEMORANDUM OPINION**

Plaintiff Nadine Countess filed suit against her employer, the State of Maryland, alleging discrimination in employment. ECF 2. Plaintiff, who is African-American, alleged that her transfer to a new position, without the supervisory responsibilities she previously held, amounted to race discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, codified as amended at 42 U.S.C. §§ 2000e *et seq.*, and Maryland Code (2009 Repl. Vol., 2011 Supp.), § 12-601 *et seq.* of the State Government Article ("S.G."). *Id.*[1] In response to defendant's motion to dismiss (ECF 11), plaintiff filed an amended complaint ("Am. Compl.," ECF 13), which is the operative complaint. Following discovery, defendant filed a Motion for Summary Judgment (ECF 37), supported by a Memorandum ("Memo," ECF 37-2) and exhibits (collectively, the "Motion"). The Motion has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6.[2] For the reasons that follow, I will grant the Motion.

---

[1] Suit was filed in the Circuit Court for Baltimore City. Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. ECF 1.

[2] In addition to the Motion, I have considered plaintiff's opposition (ECF 40) as well as defendant's reply (ECF 41).

- 1 -

# Factual Background[3]

Countess has been an employee of the State of Maryland for over thirty years and has spent more than twenty years with the Child Support Enforcement Administration ("CSEA"). *See* Whistleblower Complaint, Memo Ex. G (ECF 37-9). At all times relevant to this case, Countess worked as an Assistant Director at CSEA. *Id.* Her direct supervisor was Fran Johnson; her second-line supervisor was Hubert Aduna; her third-line supervisor was Gina Higginbotham. *See* Deposition of Fran Johnson, Director of Direct Services at CSEA, ("Johnson Dep.," ECF 40-4) at 13, 16–19.

Countess supervised the Central Registry/Interstate Unit of CSEA. Affidavit of Gina Higginbotham, Deputy Executive Director for Programs at CSEA ("Higginbotham Aff.," ECF 11-7) ¶ 1. One aspect of her job was to monitor the Interstate Case Reconciliation ("ICR") project, which aimed to reconcile Maryland's interstate child-support case data with that of other states. *Id.* For example, if a child-support case involved parents living in different states, the ICR team would help ensure that Maryland had received all pertinent data from the other state's records. *Id.* The ICR project was conducted with support from University of Maryland employees who contracted to assist with the project. *Id.* Countess supervised these contractual employees. *Id.*

Johnson testified at her deposition that she began receiving complaints about Countess from CSEA staff and other state employees in early 2011. Johnson Dep. at 62–64, 90–93. One such complaint stated that the ICR staff was belittled, micromanaged, bullied, "spoken to as if they [were] children," and threatened with termination. Ex. 0 to the Affidavit of Fran Johnson

---

[3] As required in the context of a motion for summary judgment, I have construed the facts in the light most favorable to plaintiff. In any event, the facts set forth are undisputed, unless otherwise noted.

("Johnson Aff.," ECF 37-3 at 4). Further, the complainant advised that the contractual staff was "walking on eggshells" and that morale was "very low." *Id.* Around the same time, the same individual told Higginbotham that Countess treated her as her "personal assistant," requested that she violate state rules regarding use of the state's fleet of vehicles, and that the staff would often cry after meetings with Countess. Higginbotham Aff. ¶ 2. According to a timeline Johnson created in preparation for a later grievance hearing, another ICR staffer named Dorothy Craig also complained about the work environment on the ICR team. Johnson Timeline, ECF 37-3 at 3.[4]

Higginbotham and Johnson relayed these complaints to Aduna, who then interviewed several ICR staffers. Johnson Dep. at 88, 91; Higginbotham Aff. ¶ 2. On March 2, 2011, following his interviews with the ICR staff and a meeting with Countess, Aduna advised that he was temporarily transferring the ICR contract monitor function from Countess to Johnson. Ex. 2 to Johnson Aff. (ECF 37-3 at 7); Opp. Ex. 6 (ECF 40-9).

On March 9, 2011, Johnson conducted a series of interviews with the contractual staff from the University of Maryland. According to the email informing the staff of these meetings, the purpose of the meetings was to "gather pertinent information that will, 1) help shed light on the conditions of the work environment . . . , and, 2) to discuss your interactions with the Interstate Operation's management team." Opp. Ex. 7 (ECF 40-10). Johnson's handwritten notes from these interviews are included in the record as Exhibit 4 to the Johnson Affidavit. ECF 37-3 at 20–27, 37–44. Although the notes are difficult to decipher, they appear to reflect, *inter alia*, some staffers' concerns with Countess's professionalism and managerial effectiveness. *Id.*; Johnson Dep. at 69–77, 80. One particular concern that surfaced repeatedly was the staffers'

---

[4] It is not clear whether Countess accepts the factual content of these complaints, but she does not dispute that the complaints were made.

fear that Countess would have them fired if they did not do exactly what she asked of them. *See, e.g.*, Higginbotham Aff. ¶ 4.

On March 10, 2011, Countess filed a grievance through the State Personnel Management System regarding Aduna's reassignment of oversight responsibilities of the ICR unit from Countess to Johnson. *See* Grievance Form, ECF 37-4 at 8.[5] Higginbotham conducted a grievance hearing on March 17, 2011. *Id.* at 14.[6] Handwritten notes from the hearing reflect that parties discussed the morale issues previously reported to Johnson and Higginbotham. *Id.* at 13. On March 21, 2011, Higginbotham denied Countess's grievance, stating that "the action taken was consistent with management's rights . . . ." *Id.* at 17. Countess pursued her appellate rights, and a "Step-Two" grievance hearing was scheduled for May 10, 2011. Affidavit of Daniel Watt, Assistant Manager of the Employee Relations Unit of the Maryland Department of Human Resources ("DHR") ("Watt Aff.," ECF 37-5).

In the interim, on April 18, 2011, Countess filed a complaint of discrimination with the DHR's Office of Employment and Program Equity. Memo Ex. F (ECF 37-8). Her complaint stated, *id.*:

> On March 10, 2011, I felt that I was forced to file grievances in an attempt to formalize my complaints and obtain relief from my current situation. On March 17, 2011, I met with the Interim Executive Director and provide[d] information regarding direct violations of personnel policies, unfair employment practices, bullying, and harassment that had caused me emotional distress. . . . To date, Ms. Johnson still remains my supervisor and no attempts to address any of my concerns have been made. Additionally, I do not believe management did a thorough investigation into my [complaint].
> The discrimination and adverse employment actions that CSEA management continues to allow is in direct violation of [Maryland Law].

---

[5] Countess also filed a second grievance about a counseling memorandum she had received regarding unauthorized leave. ECF 37-4 at 10. The grievance was denied. ECF 37-4 at 13.

[6] The grievance process is set forth in Md. Code (2009 Repl. Vol., 2013 Supp.), §§ 12-201 *et seq.* of the State Personnel & Pensions Article.

- 4 -

The grievance hearing took place as scheduled on May 10, 2011, and it was attended by Higginbotham, Aduna, Johnson, and other CSEA staff members. ECF 37-5 at 7. Daniel Wait and Tymeana M. Bullock, Employee Relations Officer for DHR, presided at the hearing. After the hearing, Countess's grievance was denied because she "presented no evidence to indicate that management has in any way abused its discretion . . . ." *Id.* According to defendants, Countess appealed this decision to the Department of Budget and Management, which rendered a decision in favor of CSEA. Memo at 8 n.8.

Countess filed a second complaint of discrimination with DHR on May 17, 2011. She alleged in her complaint that "male colleagues are more likely to be promoted when new work functions are assigned [than are] qualified female employees." Opp. Ex. 4 at 1–2.

On June 29, 2011, Countess filed a memorandum objecting to her mid-cycle performance evaluation for Fiscal Year 2012. Opp. Ex. 5. The memorandum took issue with the manner in which her performance evaluation was conducted. In particular, Countess stated her belief that the process "was discriminatory and inequitable," and she stated that she was "in dispute of the Satisfactory Performance Rating and request that it be rescinded." *Id*. Countess sent the memorandum to Johnson and Aduna. *Id.*; Johnson Dep. at 152–53. Higginbotham was unsure whether she ever received or learned about the memorandum. Higginbotham Dep. at 90.

That same day, Countess left work on sick leave. She returned to work on July 18, 2011, and met with Johnson. Johnson read aloud a memorandum written by Higginbotham notifying Countess that, effective August 1, 2011, she would be transferred to the Department of Human Resources Information Systems ("DHRIS"), located in Essex. *See* Temporary Transfer Letter, ECF 37-4 at 61; *see* ECF 37-3 at 64–65. Although Countess's title and salary would remain the

same, her responsibilities were reduced and her supervisory duties were eliminated. Higginbotham Dep. at 139.

Higginbotham cited two reasons for her decision to transfer Countess. First, according to Higginbotham, "there was still the concern that staff were afraid of her. That did not go away." *Id.* at 77. Higginbotham indicated in her affidavit that in addition to the complaints from the University of Maryland contractual staff, she had also received complaints from "Central Registry staff, also under the supervision of Ms. Countess." Higginbotham Aff. ¶ 6. According to Higginbotham, those complaints indicated that the Central Registry staff was intimidated by Countess, afraid of Countess, and concerned that Countess "would stop at nothing to get even with them for making complaints about her." *Id.* Further, Higginbotham testified that Johnson and other staff members were "visibly" afraid of Countess, and she recalled complaints that Countess screamed and cursed at other members of the staff. Higginbotham Dep. at 26, 29, 117–122.

Higginbotham also cited the fact that DHRIS had a staff shortage, *id.* at 77: "And so I did talk with the assistant director over [at DHRIS], and they needed a person. They were short a person, and Nadine was very strong in technical understanding of our system." When asked again why she decided to transfer Countess, Higginbotham reiterated: "Staff were afraid of her, and we were short staff there [at DHRIS]." *Id.* at 80. When asked why "there was a four-month gap between when the allegations and investigation apparently occurred and the decision to remove Ms. Countess from all her supervisory duties," Higginbotham stated that she could not recall the cause for the gap. Higginbotham Dep. at 99.

After Countess was transferred, she emailed Higginbotham, stating, EVF 37-4 at 62: "In response to . . . being transferred to DHRIS and changing my essential work functions . . . , I'm

in dispute. . . . . [T]he temporary position is a demotion in my essential job duties and responsibilities . . . . " Thereafter, on September 3, 2011, Countess filed a charge of discrimination with the Maryland Commission on Human Relations, alleging that she had been discriminated against because of her race and that she had been retaliated against for filing her grievances of March 10, 2011, and June 29, 2011. Memo Ex. H (ECF 37-10). Plaintiff received a right-to-sue letter from the EEOC on or about March 19, 2012. Am. Compl. ¶ 48.

**Standard of Review**

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In response to a motion for summary judgment, the non-moving party must demonstrate that there are disputes of material fact so as to preclude the award of summary judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U. S. at 247–48 (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [its] pleadings,' but rather must 'set forth specific facts'"

showing that there is a triable issue. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). In resolving a summary judgment motion, the court must view all of the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The "judge's function" in reviewing a motion for summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," there is a dispute of material fact that precludes summary judgment. *Id.* at 248.

As noted, plaintiff has filed claims of discrimination under federal and Maryland law. Because of the similarity in wording and substance between Title VII and Maryland antidiscrimination law, Maryland courts interpreting S.G. § 20-601 (formerly Art. 49B, § 16 of the Maryland Annotated Code) have often found federal cases arising under Title VII to be persuasive authority. *See, e.g.*, *Taylor v. Giant of Maryland, LLC*, 423 Md. 628, 652, 33 A.3d 445, 459 (2011); *Chappell v. S. Md. Hosp., Inc.*, 320 Md. 483, 494, 578 A.2d 766 (1990); *Edgewood Mgmt. Corp. v. Jackson*, 212 Md. App. 177, 200 n.8, 66 A.3d 1152, 1166 n.8 (2013); *Md. Shipbuilding & Drydock Co., Inc. v. Md. Comm'n on Human Rel.,* 70 Md. App. 538, 545–50, 521 A.2d 1263 (1987). And, Countess has not asserted any distinction between her federal and state claims. Accordingly, the analysis of plaintiff's retaliation claim governs both her federal and state claims. *See Blakes v. City of Hyattsville*, 909 F. Supp. 2d 431, 444 (D. Md.

2012) ("Plaintiff's state law racial discrimination claim duplicates his Title VII racial discrimination claim and fails for the same reasons.").

## Discussion

*Race Discrimination (Counts I and III)*

Plaintiff's Complaint alleges discrimination on the basis of race, in violation of Title VII and Maryland law. Compl. ¶¶ 59, 72. However, in her Opposition, plaintiff concedes: "[T]here is insufficient evidence to create a genuine issue of material fact as to race discrimination." Opp. at 18. Accordingly, I will grant summary judgment in favor of defendant with respect to Counts I and III of plaintiff's Amended Complaint.

*Retaliation (Counts II and IV)*

Plaintiff alleges that she was transferred to DHRIS in retaliation for her Memorandum to Adusa and Johnson of June 29, 2011, in which she stated her belief that she was being discriminated against. Opp. at 18. She claims that her transfer violated Title VII and S.G. § 20-601 *et seq*. In response, defendant claims that it had "two related, non-retaliatory reasons for transferring Plaintiff Countess: (1) CSEA's staff were complaining about Countess, specifically . . . that Countess was intimidating them and threatening them with termination; and (2) CSEA had a staffing shortage at its IT facility in Essex." Reply at 1.

"Title VII prohibits an employer from retaliating against an employee who exercises his Title VII rights." *Thorn v. Sebelius*, 766 F.Supp.2d 585, 600 (D. Md. 2011); *see Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011). The purpose of Title VII's antiretaliation provision is to "[m]aintain[] unfettered access to statutory remedial mechanisms" for employees who fear reprisal. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997).

In general, there are "two avenues" at trial by which a plaintiff may prove that an adverse employment action amounts to improper retaliation.[7] *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc). The first is to offer direct or indirect evidence that retaliation was a motive for the employer's adverse employment decision. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). "To avoid summary judgment" when proceeding under these ordinary principles of proof, "the plaintiff must produce direct evidence" of a stated retaliatory purpose "and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (internal citations and quotation marks omitted; alteration in original). Here, plaintiff offers no direct evidence of retaliation.

The second avenue available to the plaintiff is to follow the burden-shifting approach articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* scheme is "a procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993) (emphasis omitted). Under the *McDonnell Douglas* approach, the "ultimate burden of persuasion [at trial] never 'shifts' from the plaintiff" to prove intentional unlawful discrimination. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 n. 2 (4th Cir. 1989) (citation omitted).

Absent direct evidence of discrimination, the plaintiff at trial must first establish, by a preponderance of the evidence, a prima facie case of retaliation. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). In order to establish a prima facie claim of retaliation under Title VII, "a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing a

---

[7] The same "two avenues" are available to plaintiffs whether they bring a claim for substantive employment discrimination or, as in this case, retaliation. *See Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004). Accordingly, in setting forth the governing standard, I rely on both substantive discrimination and retaliation cases.

complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli*, 648 F.3d at 223 (citations omitted); *see Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004).

If the plaintiff establishes a prima facie case, a presumption of retaliation arises, and the burden of production shifts to the employer to produce evidence of a legitimate, non-retaliatory reason for its adverse employment action. *Price*, 380 F.3d at 212; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted." *Burdine*, 450 U.S. at 255. In that circumstance, the *McDonnell Douglas* framework is no longer relevant and "simply drops out of the picture." *St. Mary's Honor Ctr.*, 509 U.S. at 510–11. The onus then falls on the plaintiff to show that the employer's proffered non-retaliatory reasons are pretextual. *EEOC v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005); *Price*, 380 F.3d at 212.

To be sure, the relevance of the *McDonnell Douglas* scheme outside of the trial context is limited. The Fourth Circuit has admonished district courts at the summary judgment stage to "'resist the temptation to become so entwined in the intricacies of the [*McDonnell Douglas*] proof scheme that they forget that the scheme exists solely to facilitate determination of the ultimate question of discrimination *vel non*.'" *Merritt*, 601 F.3d at 295 (quoting *Proud v. Stone*, 945 F.2d 796, 798 (4th Cir. 1991)) (alterations in *Merritt*; internal quotation marks omitted). Further, the Fourth Circuit has observed that, "[n]otwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of 'the ultimate question of discrimination *vel non*.'" *Id*. at 294–95 (citation omitted).

Nevertheless, at summary judgment, the plaintiff must proffer sufficient evidence such that a reasonable trier of fact could conclude that the employer's explanation is false or

"'unworthy of credence,'" *Mereish v. Walker,* 359 F.3d 330, 336 (4th Cir. 2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)), and that retaliation was the true reason for the adverse employment action. *See Adams v. Trustees of the Univ. of N.C.-Wilmington*, 640 F.3d 550, 560 (4th Cir. 2011); *Price v. Thompson* 308 F.3d at 217. When the employer's proffered reason is performance-related, plaintiff cannot carry his burden simply by disputing the merits of his employer's performance assessment. *Kess v. Mun. Employees Credit Union of Baltimore, Inc.*, 319 F. Supp. 2d 637, 647–48 (D. Md. 2004). Rather, the plaintiff must proffer evidence from which a jury could conclude that the employer did not honestly believe its assessments were accurate or that the employer did not actually rely on the assessments in taking adverse employment action against the employee. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant to the question of retaliation . . . ."), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002).

Where, as here, an employer has proffered evidence of a legitimate reason for its adverse action in its motion for summary judgment, it is a common practice to assume, without deciding, that the plaintiff has established a *prima facie* case. *See, e.g.*, *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007); *Hux v. City of Newport News*, 451 F.3d 311, 314 (4th Cir. 2006); *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (en banc); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319–20 (4th Cir. 2005); *see also Geist v. Gill/Kardash P'ship*, 671 F. Supp.2d 729, 736–37 (D. Md. 2009); *Spriggs v. Pub. Serv. Comm'n*, 197 F. Supp. 2d 388, 394 (D. Md. 2002). Accordingly, I will presume that plaintiff has stated a *prima facie* case.

As noted, defendant has provided a non-retaliatory reason for transferring Countess to DHRIS: Countess's supervisors received numerous complaints about Countess from her supervisees. Defendant has proffered deposition testimony, affidavits, and other documentary evidence that it received such complaints. *See, e.g.* Higginbotham Aff. ¶¶ 1, 2, 6; Higginbotham Dep. at 26, 29, 117–122; Johnson Dep. at 62–64, 90–93. Countess has not disputed that these complaints were made.

Receipt of complaints about an employee's treatment of subordinates constitutes a legitimate reason to transfer that employee to a new position with less or no supervisory responsibilities. *See, e.g.*, *Brown v. City of Jacksonville*, 711 F.3d 883, 893 (8th Cir. 2013); *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007); *Dangerfield v. Franklin Square Hosp.*, Civ. No. CCB-07-2836, 2008 WL 2466540 (D. Md. June 13, 2008); *Kess v. Mun. Employees Credit Union of Baltimore, Inc.*, 319 F. Supp. 2d 637, 647 (D. Md. 2004). Because defendant has proffered a legitimate, non-retaliatory reason for plaintiff's transfer, I will proceed to determine whether plaintiff has proffered evidence from which a reasonable jury could conclude that the employer's proffered reason was pretextual.

Rather than offering evidence to suggest that the complaints were fabricated or that Higginbotham did not actually believe in the veracity of the complaints, plaintiff attempts to disparage the manner in which Higginbotham responded to the complaints. Countess asserts that "Higginbotham testified repeatedly that she removed Countess because of the fears" of other CSEA and state employees, but "could never identify any basis for these fears" or point to "anything concrete" to justify her conclusion that other employees were afraid of Countess. Opp. at 28. This suggestion is in line with the questions of plaintiff's counsel throughout Higginbotham's deposition, suggesting that Higginbotham did not adequately substantiate the

content of the complaints. For example, the following exchange occurred at Higginbotham's deposition, at 82–83:

> Q: Do you recall whether or not the allegations that were made by the employees had any factual basis to your understanding --
> A: Could you repeat that?
> Q: [W]as there any basis in fact for the allegations against Ms. Countess?
> A: Any basis in fact? So you mean outside of my own meetings with the staff?
> Q: Outside of the allegations themselves --
> A: Oh, outside of the allegations by the staff?
> Q: Right. Were there any facts that supported any kind of misconduct by Ms. Countess?
> . . .
> A: By facts, do you mean something documented?
> Q: Fact being anything that is verifiable and not based on just a mere belief.

This line of questioning and plaintiff's arguments in opposition to summary judgment seem to proceed from the assumption that staff complaints are not a justifiable basis for an employer's decision to transfer an employee. According to plaintiff, the complaints from staff do not qualify as "facts," are not "concrete," and are "too thin" to satisfy defendant's burden of providing a legitimate non-retaliatory reason for transferring Countess. *See, e.g.*, Opp at 29–30.

Plaintiff is mistaken. Although Higginbotham may have been able to uncover additional information about the incidents that formed the basis of the staff's complaints, she was not required to meet some sort of strict evidentiary burden before making a personnel decision. Moreover, it is not the role of the federal courts to "act as a super-personnel department that reexamines an entity's business decisions." *Beall v. Abbott Laboratories,* 130 F.3d 614, 620 (4th Cir. 1997), *abrogated on other grounds by National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). Rather, the role of the court is to determine whether plaintiff has cast any doubt on defendant's claim that its proffered non-retaliatory reason was its true reason for its decision to transfer plaintiff. *See Reeves*, 530 U.S. at 143 (Plaintiff must demonstrate "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

discrimination."); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) ("[W]hen an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." (quotation marks and citation omitted)).

Countess has not cast any such doubt. She does not deny that her subordinates filed complaints about her; she only suggests that Higginbotham could have better substantiated the complaints she received. Similarly, plaintiff does not contend that Higginbotham did not believe in the veracity of the complaints; she only suggests that Higginbotham might have formed that belief without doing an adequate investigation. These suggestions get plaintiff nowhere, as "[a] reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination." *Holder v. City of Raleigh*, 867 F.2d 823, 829 (4th Cir. 1989) (internal quotation marks omitted); *see also Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001) ("As long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect."). Plaintiff has failed to provide any basis from which a jury could conclude that Higginbotham's true reason for transferring Countess was improper retaliation.

Plaintiff's reliance on *Okoli*, *supra,* 648 F.3d 216, is misplaced. In *Okoli*, the plaintiff was fired mere hours after filing an internal complaint alleging sexual harassment. Her employer's proffered nondiscriminatory reason for firing her was that she "occasionally had scheduling conflicts and made typographical errors." *Id.* at 223. The Fourth Circuit reversed the district court's grant of summary judgment in favor of the employer, altogether rejecting the notion that the plaintiff "would have been fired for the occasional typo" or that "those lone

- 15 -

scheduling conflicts were so egregious as to provide a legitimate basis for firing" the plaintiff. *Id.* The case *sub judice* is readily distinguishable. The proffered reason in *Okoli* was so patently absurd that no evidence was needed to cast doubt on it. In contrast, the quantity and seriousness of the complaints about Countess provided an adequate basis for Higginbotham's decision to remove her from a supervisory role. Therefore, Countess was obligated to offer some evidence to support a finding that this explanation was unworthy of credence, but she has utterly failed to do so.

In short, when an employer receives numerous complaints about an employee and makes a personnel decision on the basis of those complaints, the employee's mere dissatisfaction with the thoroughness or speed of the employer's investigation does not give rise to liability under Title VII. *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Even if these investigations were improper or substandard, that does little to help [plaintiff] establish that the reasons given for her termination were not the actual reasons . . . ."). Accordingly, defendant's motion for summary judgment with respect to Counts II and IV will be granted.

## CONCLUSION

For the foregoing reasons, summary judgment will be granted in favor of defendant. A separate Order, consistent with this Memorandum, follows.

Date: January 16, 2014                         /s/
                                               Ellen Lipton Hollander
                                               United States District Judge